IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 8:08CV344 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **PLAINTIFF'S RESPONSE TO** |
| $35,000.00 IN UNITED ) | **CLAIMANT'S MOTION TO** |
| STATES CURRENCY, ) | **SUPPRESS** |
| Defendant, ) | |
| ) | |
| ) | |
| ) | |
| DANIEL HITCHCOCK, ) | |
| ) | |
| Claimant. ) | |
| ) | |

**Introduction**

On January 3, 2008, Nebraska State Patrol Trooper Kaleb Bruggeman conducted a traffic stop on Daniel Hitchcock as a companion and he were traveling west on Nebraska Highway 2 in Otoe County, Nebraska. Troopers searched Mr. Hitchcock's vehicle during the traffic stop and found the Defendant property, $35,000.00.

Mr. Hitchcock claims the trooper had no probable cause and no reasonable suspicion to conduct the traffic stop. He claims his continued detention was without reasonable suspicion and/or probable cause. He also claims the officers' warrantless search of his vehicle was conducted without probable cause and was not conducted pursuant to a valid exception to the search warrant requirement. Finally, Mr. Hitchcock contends that, subsequent to his detention, he made statements to officers without being first advised of his *Miranda* rights.

The United States respectfully submits the traffic stop was supported by probable cause. The United States further submits the events following the traffic stop were all constitutionally sound.

**Facts**

On January 3, 2008, at approximately 1:50 p.m., Nebraska State Patrol Trooper Kaleb Bruggeman was on patrol on Highway 2 in Otoe County, Nebraska. Approximately one mile east of Syracuse, Trooper Bruggeman saw a white, westbound Cadillac traveling in excess of the posted speed limit. He activated his radar unit and received a reading of 75 miles an hour in a 65 mile per hour zone. After the Cadillac passed Trooper Bruggeman, it appeared to increase its speed. Trooper Bruggeman turned on his rear radar antenna, and received an 80 miles per hour reading.  Trooper Bruggeman turned around and caught up to the vehicle. In doing so, he paced it, maintaining a speed of 80 miles per hour. Trooper Bruggeman again activated his radar unit and locked in a reading of 82 miles an hour. He stopped the vehicle for speeding.

Trooper Bruggeman made contact with the driver, later identified as Daniel Hitchcock, at the driver's side window. Trooper Bruggeman immediately detected the odor of raw marijuana coming from the vehicle. A passenger, later identified as Henry Tendler, was lying down in the back seat, pretending to be asleep. Mr. Hitchcock was very nervous, sweating and shaking. Trooper Bruggeman saw a MapQuest computer printout on the passenger front seat, with a destination of northern California. Trooper Bruggeman asked Mr. Hitchcock to come back to his patrol unit.

Inside the unit, Mr. Hitchcock continued to appear very nervous; though it was very cold outside, he was sweating, and his legs were shaking. Trooper Bruggeman believed the odor of raw marijuana was coming from Mr. Hitchcock, himself. Trooper Bruggeman asked where he

was coming from. Mr. Hitchcock said Atlanta, Georgia. In response to the trooper's question, Mr. Hitchcock said he was going to St. Louis, then quickly changed that to Salt Lake City, Utah. He said he was going to visit a friend named John. He said he was going to spend a week in Utah with that friend.

      Trooper Bruggeman asked his dispatch to run criminal histories on both men. He was advised they had both been arrested numerous times including for the charge of possessing marijuana with intent to deliver. Both men advised Trooper Bruggeman they had never been arrested. Trooper Bruggeman asked Mr. Hitchcock if he had anything illegal in the vehicle; he said no. Trooper Bruggeman also asked Mr. Hitchcock about the odor of marijuana coming from his vehicle and his person. Mr. Hitchcock denied any knowledge of the odor of marijuana.

      Trooper Bruggeman issued Mr. Hitchcock a citation for speeding 82 miles an hour in a 65 mile per hour zone. He returned all of his paper to Mr. Hitchcock, who then started to get out of the patrol unit. Trooper Bruggeman then asked Mr. Hitchcock if he could ask him a few more questions. Mr. Hitchcock agreed, brought himself back into the patrol unit, and closed the door. Trooper Bruggeman asked Mr. Hitchcock for consent to search the vehicle. Mr. Hitchcock said no, because he was in a hurry. Trooper Bruggeman then informed Mr. Hitchcock that, because of the marijuana smell, he had probable cause to search the vehicle, and would be doing so.

      There was a red suitcase in the trunk of the vehicle. It contained a loaded handgun. Mr. Tendler claimed that gun as his own. At that point, both Mr. Hitchcock and Mr. Tendler were placed in handcuffs.

      Trooper Bruggeman also found a food processing/shrink-wrap machine in the red suitcase. Additionally, on the driver's side wall of the trunk, underneath the carpet molding,

Trooper Bruggeman found a shrink-wrapped package of currency, the $35,000.00 at issue in this case. Both men were then transported to the Otoe County Sheriff's Office.

Later in the afternoon on January 3, 2008, Daniel Hitchcock was approached by Nebraska State Patrol Sergeant Greg Kallhoff. Sergeant Kallhoff told Mr. Hitchcock he was an investigator assisting with the money seizure. He said, generally, he wanted to hear Mr. Hitchcock's side of the story. However, the Sergeant said he would need to get biographical information first. Mr. Hitchcock was detained at the time Sergeant Kallhoff initiated this conversation; he was in an Otoe County Sheriff's jail cell, and was not free to leave.

Mr. Hitchcock said his residence was in Springhill, Florida. He refused to provide a street address, saying any correspondence would get to him through his post office box. He said he was not aware a large amount of currency had been found in the trunk. He admitted he had approximately $1,000 in the glove box. (Officers did find $750.00 in the glove compartment.) Mr. Hitchcock said he had saved that money, and it was not part of anything found in the trunk. He said he did not own the money found in the trunk.

Mr. Hitchcock said he was traveling to Salt Lake City, Utah to ski in Lake Tahoe. He was meeting a friend there; however, he refused to identify that person. Mr. Hitchcock stated the only clothing suitable for skiing were the two hooded sweatshirts he had packed. He intended to rent boots, warm clothes, gloves, skis and bindings when he arrived in Utah.

Mr. Hitchcock told Sergeant Kallhoff he was a jewelry salesman. He purchased jewelry all over the Internet and resold it door-to-door. He estimated he earned $5,000.00 in 2007, under $5,000.00 in 2006 and was unemployed in 2005. He also told Sergeant Kallhoff he had received an inheritance from his mother's estate. He refused to provide Sergeant Kallhoff with his mother's last name, when she died or the amount he had received as an inheritance.

Because he denied ownership, Sergeant Kallhoff prepared a Nebraska State Patrol form entitled, Voluntary Disclaimer of Interest and Ownership. He read it to Mr. Hitchcock, who read it, himself. Mr. Hitchcock again told Sergeant Kallhoff the money in the trunk was not his but he would not sign the document without first having an attorney review it. Mr. Hitchcock then requested an attorney; that ended the interview.

### Argument

Trooper Bruggeman saw Mr. Hitchcock conduct a traffic violation; he saw Mr. Hitchcock speeding. Then, using his radar equipment, he determined Mr. Hitchcock was traveling up to 82 miles per hour in a 65 mile per hour zone. This gave the trooper probable cause to stop the vehicle. "[A]ny traffic violation–however minor–creates probable cause to stop the driver of a vehicle." United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002) (citations omitted).

Mr. Hitchcock contends Trooper Bruggeman illegally expanded the nature and scope of the traffic stop of the vehicle. The United States believes Mr. Hitchcock is referring to the trooper's actions of having Mr. Hitchcock sit in the patrol car and talk to him. But the trooper did nothing wrong. In fact, he had every right to take the action he did. Incident to the stop, an officer is entitled only to conduct an investigation reasonably related in scope to the circumstances that justified the initial stop. United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990)(citing Terry v. Ohio, 392 U. S. 1, 20 (1968)). The officer "may lawfully check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car". United States v. Brown, 345 F.3d 574, 578 (8th Cir. 2003). And, "as part of a reasonable investigation, an 'officer may also question a vehicle's passengers to verify information provided by the driver'". United States v. Ward, 484 F.3d

5

1059, 1061 (8th Cir. 2007) (quoting United States v. Sanchez, 417 F.3d 971, 975 (8th Cir. 2005)).  The officer "may detain the driver as long as reasonably necessary to conduct these activities and to issue a warning or citation".  United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001).  However, reasonable articulable suspicion is necessary to expand the scope of the initial investigation.  United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008).

The law allowed Trooper Bruggeman to detain Daniel Hitchcock for as long as reasonably necessary to perform the routine tasks related to the traffic violation and to issue a warning or citation.  See United States v. $404, 905.00 in United States Currency, 182 F.3d 643, 647 (8th Cir. 1999), cert. denied, 528 U. S. 1161 (2000).  Trooper Bruggeman's brief detention of Mr. Hitchcock before the search was entirely reasonable.

"Police may search a car without a warrant if they have probable cause to believe that the car contains contraband or evidence." United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999).  Trooper Bruggeman detected the odor of raw marijuana coming from the Cadillac and from Mr. Hitchcock, himself. That, alone, justified the search of the Cadillac. See United States v. Jennings, No. 06–4109, 2007 WL 2142260, *1 (8th Cir. July 27, 2007) (per curiam) (unpublished); United States v. Clayborn, 339 F.3d 700, 702 (8th Cir. 2003); United States v. Peltier, 217 F.3d 608, 610 (2000).

"Miranda protections are triggered only when a defendant is in custody and being interrogated." United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir.), cert. denied, 503 US 1011 (1992). "'Interrogation' is 'express questioning', or words or actions 'that the police should know are reasonably likely to elicit an incriminating response. ...'. Rhode Island v. Innis, 446 U. S. 291, 301 (1980); Lawrence, 952 F.2d at 1036 ... ." United States v. Hatten, 68 F.3d 257, 261–262 (8th Cir. 1995), cert. denied, 516 U. S. 1150 (1996) (parallel citations omitted).

However, "[i]t is well-settled that routine biographical data is exempted from <u>Miranda</u>'s coverage".  <u>United States v. Brown</u>, 101 F.3d 1272, 1274 (8th Cir. 1996) (citations omitted). And, "volunteered statements of any kind are not barred by the Fifth Amendment".  <u>United States v. Lockett</u>, 393 F.3d 834, 837 (8th Cir. 2005) (quoting <u>Miranda v. Arizona</u>, 384 U. S. 436, 478 (1966)).

Sgt. Kallhoff only sought biographical information from Mr. Hitchcock.  The Sergeant had no reason to believe his statement to Mr. Hitchcock that he (Kallhoff) was trying to determine to whom the money belonged would result in Mr. Hitchcock making statements about his annual income and the fact he received an inheritance.  Moreover, those statements were volunteered.  They were not in response to direct questioning by the Sergeant.  The statements Mr. Hitchcock made to Sergeant Kallhoff did not violate Mr. Hitchcock's <u>Miranda</u> rights.

## Conclusion

For the reasons stated herein, the United States respectfully requests this Court deny Mr. Hitchcock's Motion to Suppress.

                      UNITED STATES OF AMERICA,
                      Plaintiff

                      JOE W. STECHER
                      United States Attorney

        By:     s/Nancy A. Svoboda
              NANCY A. SVOBODA (#17429)
              Assistant United States Attorney
              1620 Dodge Street, Suite 1400
              Omaha, Nebraska  68102-1506
              (402) 661-3700

## CERTIFICATE OF SERVICE

     I, the undersigned, do hereby certify on June 17th, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: Justin J. Cook, Attorney at Law

                                         s/Nancy A. Svoboda
                                        NANCY A. SVOBODA
                                        Assistant United States Attorney